UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER E. BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>ST. JOHN'S UNIVERSITY, GCA SERVICES GROUP, INC., BUTLER ROGERS BASKETT, H.M. WHITE SITE ARCHITECTS, SKANSKA USA BUILDING, INC., and LANGAN ENGINEERING AND ENVIRONMENTAL SERVICES, INC.<br><br>        Defendants. | Civil Action No. 08-CV-2218<br><br>Hon. J. Ross<br><br>Hon. M.J. Pohorelsky<br><br>**DEFENDANT LANGAN ENGINEERING AND ENVIRONMENTAL SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT II** |
| ST. JOHN'S UNIVERSITY,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>GCA SERVICES GROUP, INC., and BUTLER ROGERS BASKETT,<br><br>        Third-Party Defendants. | |
| BUTLER ROGERS BASKETT,<br><br>        Fourth-Party Plaintiff,<br><br>v.<br><br>H.M. WHITE SITE ARCHITECTS, SKANSKA USA BUILDING, INC. and LANGAN ENGINEERING AND ENVIRONMENTAL SERVICES, INC.<br><br>        Fourth-Party Defendants. | |

1

I.      **INTRODUCTION**

Langan has moved to dismiss Count II of Brown's First Amended Complaint on two independent grounds: (1) As a corporation, Langan may not be sued under Section 40-d because a corporation is not a "person" susceptible to suit according to the Second Circuit; and (2) Brown failed to allege that Langan purposefully discriminated against him, a necessary element of a discrimination claim under Sections 40-c and 40-d.

In his Opposition, Christopher Brown now argues that (1) the Court should distinguish *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286 (2d Cir. 1992), in order to hold that the term "person" means different things in related sections of New York's Civil Rights Law, and (2) the Court should infer an allegation of purposeful discrimination never actually stated in the First Amended Complaint. Brown's arguments lack any support in logic or relevant caselaw. Moreover, Brown has failed to distinguish any of the cases or legal principles cited in support of Langan's arguments in its opening brief. The Court, therefore, should grant Langan's motion and dismiss Count II of the First Amended Complaint.

II      **BROWN ASKS THE COURT TO IGNORE BINDING SECOND CIRCUIT PRECEDENT**

In *Jews for Jesus*, the Second Circuit held that a corporation was not a "person" within the meaning of N.Y. Civ. Rights. L. 40. *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286 (2d Cir. 1992). The Second Circuit reached this result by analyzing the use of the word "person" in Sections 40, 41, *and 40-c* of the New York Civil Rights Law. *Id.* at 293. The Second Circuit did not, as Brown urges this Court to conclude, find that any of these statutes were ambiguous. Instead, the Second Circuit explained that the "clear juxtaposition" between "person" and "corporation" drawn in

2

Sections 40-c and 41 "*plainly* indicates that the legislature intended to refer to different entities when it used those terms" and concluded that the use of the word "person" in Section 40 therefore did not encompass corporations. *Id.* (emphasis added). Thus, Langan's Motion to Dismiss asks this Court to rule that "person," as used in Sections 40-c and 40-d, cannot encompass corporations due to the same "clear juxtaposition" between "person" and "corporation" that the Second Circuit identified in *Jews for Jesus*.

Brown's Opposition makes no meaningful attempt to distinguish the Second Circuit's reasoning in *Jews for Jesus*. Instead, Brown suggests that the Court should ignore the Second Circuit's actual analysis because *Jews for Jesus* was (according to Brown) a result-oriented decision that interpreted the statutory language as it did only because the plaintiff was a corporation and not an individual. (Opp. Br. at 6). Brown invites this Court to interpret the meaning of "person" in New York's Civil Rights Law differently for different plaintiffs. This request effectively asks for an inconsistent result, in which the meaning of a statute changes from case to case. Beyond the obvious impropriety of this interpretive strategy, the reasoning of the Second Circuit cannot be disregarded when analyzing the meaning of Section 40-c and related sections of the New York Civil Rights Law. To the contrary, this Court should apply the analysis used in *Jews for Jesus* to interpret the New York Civil Rights Law because its holding – the term "person" does not encompass a corporation based on "plain language of the Civil Rights Law and elementary principles of statutory construction" – is fully applicable to the present case. *Jews for Jesus*, 968 F.2d at 293.

Brown's claim that the Court should rely on the interpretive canon that ambiguous remedial statutes should be interpreted broadly is similarly flawed. (Opp. Br. at 5). Even if

3

that canon were applicable and compelled the result Brown prefers – which it does not[1] – this Court cannot simply ignore the reasoning and result in *Jews for Jesus*.

Brown's claim that the term "person," as used in statutes unrelated to the New York Civil Rights Law, sometimes encompasses corporations is accurate but wholly irrelevant. (Opp. Br. at 6-7). The issue here is the meaning of "person" in Sections 40-c and 40-d of the New York Civil Rights Law. Similarly, Brown's assertion that a legislature *could* exclude corporations by using the term "natural person" instead of person is also irrelevant – the failure to write a more specific statute proves nothing at all. Moreover, the conclusion that Brown draws – "if the New York Legislature intended to include only human beings in the § 40-d definition of 'person,' it would have said 'natural person' instead" – is misplaced. (Opp. Br. at 6). The falsity of this argument requires nothing more than a citation to *Jews for Jesus*, in which the Second Circuit concluded that "person" as it appears in the New York Civil Rights Law meant individuals and not corporations, even in the absence of the modifier "natural."

Finally, Brown's argument that "the Second Circuit has allowed other § 40-d cases to be prosecuted against corporations" is irrelevant and unsupported by a valid citation. (Opp. Br. at 7). The "Second Circuit" case cited by Brown – "*Rivera v. The Hertz Corp.*, 990 F. Supp. 234, 238-39 (2d Cir 1997)" – was not actually issued by the Second Circuit. That

---

[1] Several other interpretative canons, ignored by Brown, point to the conclusion that the Second Circuit's interpretation was correct. Concluding that "person" as used in the Civil Rights Law does not encompass corporations respects the principle that "statutes are to be construed as a whole and that the words used in one section of a statute are presumed to have the same meaning when used in other sections." *See Jews for Jesus*, 968 F.2d at 293 (citing 2A Norman J. Singer, *Sutherland Statutory Construction* §§ 46.05-.06 (1992)). Because Section 40-d is a penal statute, the rule favoring narrow construction of such laws also applies. Brown's interpretation would also render superfluous all of the entities listed in Section 40-c other than "person," because "person" would encompass them all. Additionally, because Brown's interpretation would inevitably mean that New York State and its many agencies would also become "persons," his arguments run afoul of the canon disapproving of implied waivers of state sovereign immunity. The weight of interpretive authority, therefore, overwhelmingly supports Langan's (and the Second Circuit's) interpretation.

4

case, as suggested by its appearance in the Federal Supplement, was issued by the Southern District of New York, not the Second Circuit.  Moreover, the court's opinion in *Rivera* had nothing to do with the proper scope of the word "person" in the Civil Rights Law.  *See generally Rivera v. Hertz Corp.*, 990 F. Supp. 234 (S.D.N.Y. 1997).[2]

### III.     BROWN CONCEDES THAT HE MUST ALLEGE FACTS SHOWING PURPOSEFUL DISCRIMINATION, BUT HE HAS FAILED TO DO SO

Brown's Opposition makes no attempt to deny that the First Amended Complaint must plead "that [Langan's] acts were committed *because of* [Brown's] … disability … and *an intent to discriminate* against [Brown] in the exercise of his civil rights."  *People v. Dieppa*, 601 N.Y.S. 2d 786, 788 (N.Y.Sup. Ct. 1993) (emphases added).  *See also Beckles v. Bennett*, No. 05-CV-2000 (JSR), 2008 WL 821827, at *18 (S.D.N.Y. Mar. 28, 2008) (dismissing Section 40-c claim because plaintiff failed to produce probative evidence of "intentional or purposeful discrimination").  Instead, Brown claims that the First Amended Complaint adequately alleges that "all Defendants, including Langan, discriminated against Mr. Brown based on his disability."  (Opp. Br. at 7).

Brown relies on just one paragraph of the First Amendment Complaint to support his claim that he already has alleged facts showing Langan's "purposeful discrimination": Paragraph 56.[3]  Paragraph 56, however, is a classic example of a legal conclusion

---

[2] Brown asks that he be permitted to amend his complaint for the second time if the Court holds that Section 40-d grants a cause of action only against individuals.  This request for permission to file a Second Amended Complaint should properly be made in a separate motion.  Langan opposes any such request and notes that Brown still has no evidence that any Langan employee intended to discriminate against him for any reason.

[3] Paragraph 56 of the First Amended Complaint alleges:

> By planning, designing, constructing, operating and maintaining architectural barriers and polices that discriminate against people with disabilities and through the other actions described herein, all named Defendants have, directly and/or indirectly, refused, withheld from, and denied to Plaintiff, MR. BROWN, because of his disability, the full and equal enjoyment of its facilities.

5

masquerading as a factual allegation. As such, Brown cannot rely on a legal conclusion to salvage the First Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1950 (2009) (allegations amounting to legal conclusions are not a sufficient basis for a pleading). According to Brown, this allegation should suffice because "when you design and/or construct features that are not accessible, this will inevitably have the effect of discrimination against disabled persons once they encounter and have difficulty using the inaccessible elements." (Opp. Br. at 7).

Brown wrongly conflates a "discriminatory" *effect* with a discriminatory *purpose*. This conflation is unjustified because "'[a]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular.'" *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (quoting *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997)). *See also Tyler*, 118 F.3d at 1407 ("In enacting the ADA, Congress recognized that discrimination against the disabled is often the product of indifference rather than animosity.").

Moreover, Brown's proposed confusion of intent with effect is especially inappropriate given that Brown's "evidence" of a discriminatory effect boils down to the Defendants' alleged failure to comply with every jot and tittle of the Americans with Disabilities Act Accessibilities Guidelines for Buildings and Facilities, 28 C.F.R. Part 36 Appendix A ("ADAAG"). The ADAAG takes up 91 pages in the Code of Federal Regulations with a dense thicket of definitions, illustrations, optional and required measurements, and exceptions to all of the above. To understate the matter, the ADAAG's requirements are complex. Yet Brown argues that any failure to comply with the ADAAG's myriad commands – even a bathroom mirror installed one half inch too high – is evidence of

6

the designer or builder's discriminatory animus against the disabled. This is precisely the type of implausible inference that *Iqbal* found did not satisfy the pleading requirements of Rule 8(a)(2). *See Iqbal*, 129 S. Ct. at 1949-51.

Finally, if Brown were correct that a discriminatory effect is the same as discriminatory intent, there would be no purpose to having a separate pleading requirement for discriminatory intent because an implied "intent" would go hand-in-hand with an allegation of discrimination. Yet Brown has conceded that the cases cited in Langan's opening brief are correct – an allegation of, and eventual proof of, discriminatory intent is mandatory.

Brown, therefore, fails to allege any specific facts showing that any person or corporation acted with the purpose or intent of discriminating against him.

## IV.   CONCLUSION

Under the controlling precedent of *Jews for Jesus*, Langan is not a permissible defendant under Section 40-d. Further, Brown has failed to allege that Langan purposefully discriminated against him. For these reasons, as well as the other arguments raised in its initial brief, Langan respectfully requests that the Court dismiss Count II of the First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

                                                   Respectfully submitted,

DATED:  December 7, 2009           s/ William J. Brennan _____
                                               J. Gregory Lahr (JL-9969)
                                               William J. Brennan (WB-0742)
                                               SEDGWICK, DETERT, MORAN & ARNOLD LLP
                                               125 Broad Street, 39th Floor
                                               New York, New York 10004
                                               Telephone: 212-422-0202
                                               Facsimile:  212-422-0925
                                               Email: gregory.lahr@sdma.com
                                                       william.brennan@sdma.com

CERTIFICATE OF SERVICE

      I hereby certify that on December 7, 2009, a true and correct copy of this document was served on all counsel by email and first class mail to the following counsel of record:

Robert A. Banner, Esq.
Ingram Yuzek Gainen Carroll & Bertolotti, LLP
250 Park Ave
New York, NY 10177

Christopher L. Deininger, Esq.
Bubb Grogan & Cocca, LLP
25 Prospect Street
Morristown, NJ 07960

Elaine Nancy Chou, Esq.
Biedermann, Reif, Hoenig & Ruff, P.C.
570 Lexington Avenue
New York, NY 10022

Eyal Steven Eisig, Esq.
Gogick, Byrne & O'Neill, LLP
11 Broadway, Suite 1560
New York, NY 10004

James Justin Griffin, Esq.
Ku & Mussman P.A.
64 Oriole Street
Pearl River, NY 10965

Louis Mussman, Esq.
Ku & Mussman, P.A.
11098 Biscayne Blvd, Suite 301
Miami, FL 33161

Allen H. Gueldenzopf, Esq.
Law Office of James J. Toomey
485 Lexington Avenue
New York, NY 10017

    __s/William J. Brennan_____
    William J. Brennan